**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,               CASE NO. 16-20517
                                            HON. DENISE PAGE HOOD

v.

KEVIN BALFOUR,

        Defendant.

_____/

**ORDER DENYING DEFENDANT'S**
**MOTION TO SUPPRESS** [#26]

**I.**  **Introduction**

On May 19, 2016, Magistrate Judge Elizabeth Stafford signed a criminal complaint and arrest warrant against Defendant Kevin Balfour on the charge of impersonating a federal agent, in violation of 18 U.S.C. § 912, and felon in possession of a firearm, in violation of 18 U.S.C. § 922(g).  The Government intends to introduce at trial evidence seized by officers on July 15, 2016.  Defendant has filed a Motion to Suppress Illegally Seized Evidence [Dkt. No. 26], to which the Government has responded.  On December 16, 2016, the Court conducted a hearing on Defendant's Motion.  FBI Special Agents John Ryan and David Opperman testified at the hearing.

**II.**  **Factual Background**

On July 15, 2016, at approximately 11:25 a.m., law enforcement arrived at Defendant's home in Warren, Michigan, for the purpose of arresting him. Officers approached the front door, which was open, and announced their presence and purpose. Defendant Balfour came to door wearing an empty gun holster and exited the house. Officers began to question Defendant whether there was anyone in the house and whether any weapons were in the house. Defendant acknowledged that there was a firearm in the house (under a pillow in the living room near the front door, according to the Government), but Defendant argues that he twice stated there was no one else in the house.

According to Defendant, officers then began to enter the house to secure the firearm. Only after officers entered the house did he advise them that his son (it is not clear whether Defendant indicated that his son was an adult) was in the house, upstairs. The Government appears to argue that Defendant admitted that his son was upstairs before they entered the house. After entering the house, officers secured the firearm (which was loaded) from the living room and Defendant's son came downstairs. The Government also asserts that there were handcuffs sitting on a table in plain view.

Defendant then was handcuffed, taken away from the house, and read his *Miranda* rights at approximately 12:05 p.m. According to the Government, Defendant

orally waived his *Miranda* rights. Defendant did not consent to a search of the house, but he admitted he owned the firearm found in the living room and that he was a convicted felon. Defendant consented to a search of his car, and officers found a gun safe in the trunk of the car. After Defendant provided the combination to the gun safe, officers opened and found the safe empty.

The Government applied for and obtained a search warrant for Defendant's house, which was signed by Magistrate Judge David Grand at 1:40 p.m. When the search warrant was executed, officers found a second firearm (a Kimber semi-automatic handgun in Defendant's bedroom), a silver Chicago Police detective badge, a gold Treasury Department badge, phony military ID cards, and other items.

**III.   Analysis**

Defendant seeks to suppress the evidence seized by officers on July 15, 2016 because the "facts in this case are clear that the handgun and other items were seized immediately after the arrest of this Defendant and **prior to** receipt of the search warrant." Dkt. No. 26, PgID 48 (emphasis added). Defendant argues that there were not exigent circumstances justifying a search before the warrant was obtained. Alternatively, Defendant argues that, to the extent any exigent circumstances existed, those circumstances were discovered improperly because Defendant was in custody and should have been *Mirandized* prior to any questioning, rather than well after the

time he was arrested.

Defendant argues that officers did not have the right to ask him about the presence of a gun in the house prior to advising him of his *Miranda* rights, where there was no evidence to suggest that there were any public safety concerns. Defendant's position is that officers had no reason to believe that any persons remained in the house, which Defendant asserts should have been the mind set of officers because Defendant had denied the presence of any individuals in the house before officers entered. The parties present contradictory versions of when Defendant told officers that his son was in the house. Defendant contends officers entered the home before Defendant admitted his son's presence; the Government suggests Defendant admitted his son's presence prior to the officers' entry.

### A. Protective Sweep

The Government argues that the officers were entitled to conduct a protective sweep in this case. An entry into the privacy of a suspect's home to conduct a protective sweep is permissible if the officers had reason to believe that an individual was present who posed a danger to those on the scene. *United States v. Biggs*, 70 F.3d 913, 915 (6th Cir. 1995) (citing *Maryland v. Buie*, 494 U.S. 325, 331 (1990)); *United States v. Colbert*, 76 F.3d 773, 777-78 (6th Cir. 1996) (motion to suppress to be granted where there were no "articulable facts" to support a belief that anyone else

remained in the house). Defendant argues that there was no need or basis for officers to enter his home to conduct a protective sweep because: (1) he was in custody; (2) he was away from the house and the weapon; and (3) there was no reason to believe anyone was in the house. Citing *United States v. Akrawi*, 920 F.2d 418, 420-21 (6th Cir. 1990) (granting motion to suppress where officers articulated no specific basis for believing second floor of residence harbored an individual posing a threat to officers that would justify a protective sweep of second floor).

The Government states that officers had "articulable facts" that would warrant a reasonably prudent officer to believe that the area should be swept for individuals posing a danger to those present. *Buie*, 494 U.S. at 334. The articulable facts the Government cites are that Defendant: (a) appeared at the door of his house wearing an empty gun holster; and (b) stated that a firearm and his son were in the house. In similar circumstances, the Supreme Court has stated:

> The risk of danger in the context of an arrest in the home is as great as, if not greater than, it is in an on-the-street or roadside investigatory encounter. A *Terry* [*v. Ohio*, 392 U.S. 1, 88 (1969)] or [*Michigan v.*] *Long* [463 U.S. 1032 (1983)] frisk occurs before a police-citizen confrontation has escalated to the point of arrest. A protective sweep, in contrast, occurs as an adjunct to the serious step of taking a person into custody for the purpose of prosecuting him for a crime. Moreover, unlike an encounter on the street or along a highway, an in-home arrest puts the officer at the disadvantage of being on his adversary's "turf." An ambush in a confined setting of unknown configuration is more to be feared than it is in open, more familiar surroundings.

*Id.* at 330. The Sixth Circuit subsequently stated:

> Regarding the officer's protective sweep of the basement in *Buie*, the Supreme Court held that "there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id.* at ----, 110 S.Ct. at 1098. The *Buie* Court emphasized, however, that the protective sweep must be aimed at protecting the officers and must extend only to a cursory inspection of places where a person may hide. *Id.* at ----, 110 S.Ct. at 1099. The Court required "that the sweep last[ ] no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises." *Id.* Accordingly, the Court remanded the case to the Maryland Court of Appeals. *Id. See also United States v. Hatcher*, 680 F.2d 438, 444 (6th Cir.1982) (holding that there must be some basis for a reasonable belief that dangerous persons are on the premises to justify a protective sweep).

*Akrawi*, 920 F.2d at 420.

The Government argues that Defendant knew the location and number of individuals and firearms inside his residence—and had acknowledged the presence of one person and one firearm—and those factors were sufficient to justify a protective sweep. *See United States v. Taylor*, 666 F.3d 406 (6th Cir. 2012). The Government contends that the sweep was quick and limited, as the gun from the living room sofa was seized immediately after Defendant disclosed its location.

The Court finds that the protective sweep was legal because Defendant appeared and was arrested wearing an empty holster (which alone was a basis for reasonable belief that there might be a firearm) and the sweep was limited to the living

room (as far as the arguments suggest). Even if Defendant's version is accepted, officers had entered only the living room to seize the firearm Defendant mentioned before Defendant told the officer that a person (his son) was in the house.

### B. Public Safety Exception

Defendant argues that the officers obtained his statements about the firearm prior to advising him of his *Miranda* rights. *Miranda v. Arizona*, 384 U.S. 436 (1966). Under *Miranda*, "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Id.* at 444. But, police may interrogate prior to providing *Miranda* warnings if public safety so requires. *New York v. Quarles*, 467 U.S. 649, 659 (1984).

In *Quarles*, when officers arrested the defendant, they discovered that the defendant was wearing an empty gun holster (the officers also were aware that defendant allegedly had committed a rape at gunpoint), and before giving *Miranda* warnings, asked the defendant where the gun was. After the defendant nodded in the direction of some empty cartons and responded, "the gun is over there," an officer retrieved a loaded .38–caliber revolver from one of the cartons. The Supreme Court deemed that statement admissible and held that the need for answers to questions in a situation posing a threat to the public safety outweighs the need for the prophylactic

rule protecting the Fifth Amendment's privilege against self-incrimination. *Id.* at 657.

The Government argues that, as in *Quarles*, "[t]he public safety exception [applies here because] 'officers ha[d] a reasonable belief based on articulable facts that they [we]re in danger.'" *United States v. Williams*, 483 F.3d 425, 428 (6th Cir.2007) (quoting *United States v. Talley*, 275 F.3d 560, 563 (6th Cir.2001)). The Government again argues that Defendant answered the door wearing an empty gun holster. For that reason alone, the Government contends that its officers had "reason to believe (1) that the defendant might have (or recently . . . had) a weapon, and (2) that someone other than police might gain access to that weapon and inflict harm with it," *id.*, such that it was reasonable to ask if there were any firearms or persons in the house. In this case, like *Quarles*, Defendant indicated that there was a firearm nearby (in the living room) and an officer quickly retrieved it. The Government concludes that Defendant's un-*Mirandized* response to the officer's question about the weapon is admissible under *Quarles*. The Court agrees with the Government's position.

### C. Inevitable Discovery Doctrine

The Government contends that the evidence should not be suppressed on the basis of the inevitable discovery doctrine. The inevitable discovery doctrine provides that, where "evidence would be admissible if in fact discovered through an independent source, it should be admissible if it inevitably would have been

discovered." *Murray v. United States*, 487 U.S. 533, 539 (1988). The Sixth Circuit has applied the inevitable discovery rule in two settings: (1) when an "independent, untainted investigation ... inevitably would have uncovered the same evidence;" or (2) when there exist "other compelling facts establishing that the disputed evidence inevitably would have been discovered." *United States v. Kennedy*, 61 F.3d 494, 499 (6th Cir.1995). Defendant argues that officers cannot short-cut the warrant requirements by conducting an illegal search to determine if it would have been worthwhile to obtain a warrant. Citing *United States v. Quinney*, 583 F.3d 891 (6th Cir. 2009).

The Government represents that the firearms ultimately would have been discovered because, as Defendant was a known felon and was wearing an empty gun holster when he came to the door, officers had probable cause to apply for the search warrant. Those facts, the Government asserts, establish "a 'fair probability,' given the totality of the circumstances, that contraband or evidence of a crime [the firearm Defendant acknowledged] will be found in a particular place [in the living room]." *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991) (quoting *United States v. Loggins*, 777 F.2d 336, 338 (6th Cir. 1985)). Based on those facts, the Government argues that the magistrate judge would have reason to believe a firearm was inside Defendant's house. Again, the Court agrees with the Government's position.

## IV. Conclusion

Defendant would like this motion to turn on the Court finding that officers entered his house before they were aware that Defendant's son (or anyone) was in the house. Defendant asserts officers did not know his son was there before entering because Defendant did not tell them anyone was in the house until after they entered it.

The Court finds that Defendant told the officers that his son was in the house before officers entered the house. FBI Special Agent John Ryan testified that he made entry into the house after he head someone was in the house. FBI Special Agent David Opperman ("SA Opperman") testified that Defendant twice told him that no one was in the house and less than a minute later changed his story and told SA Opperman that Defendant's son was inside. Defendant's motion therefore has no merit, and the motion is denied. Based on this finding, not only would officers have been entitled to conduct a protective sweep, the public safety exception to *Miranda* would apply.

Even if the Court were to find that officers were not told, and did not know, anyone was in the house before they entered, the fact is undisputed that Defendant was wearing an empty gun holster and told them that a firearm was just inside the house. As such, the officers still would have had the legal right to sweep the living room.

This also appears to be a case where the discovery of the firearms and false identifications was inevitable. Defendant was a convicted felon who came out of the house wearing an empty gun holster and admitted that there was a firearm in the house. Based on those facts, without more, officers would have been able to apply for and obtain from the magistrate judge a warrant to search Defendant's house.

Accordingly, the Court **DENIES** Defendant's Motion to Suppress Illegally Seized Evidence. [Dkt. No. 26]

IT IS ORDERED.

S/Denise Page Hood
Denise Page Hood
Chief Judge, United States District Court

Dated: February 22, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 22, 2017, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager